JAMES D. TURNBULL v. JOHN A. WIDNER.

[See 94 Mich. 87.]

*Trover—Evidence of conversion.*

A contract for the sale of a quantity of ties provided that the ties should be made of sound timber, and conform to and be subject to Chicago inspection, to be made at any port to which the ties might be consigned by the vendee upon either of the. Great Lakes, no rejected ties to be paid for. The vendee's

agent received a portion of the ties on board the vessel, and refused to receive certain worthless ties, made of unsound timber, and, as claimed by the vendor, refused to receive certain other ties which conformed to the contract. The rejected ties were marked and piled upon the dock, and after a time, by the order of the vendor's foreman, were thrown into the lake. The vendor sued the agent of the vendee in trover for said rejected ties. And it is held that the fact that it was the intention of the parties that the ties should be inspected at the port of destination will not sustain the action; that, whether or not the defendant was right in insisting upon making an inspection of the ties at the port of shipment, the fact that he made such inspection did not amount to a conversion of the rejected ties.

Error to Alpena. (Kelley, J.) Argued November 21, 1894. Decided January 4, 1895.

Trover. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*J. D. Turnbull,* for appellant.

*Frank Emerick,* for defendant.

MONTGOMERY, J. This is an action of trover. The facts in the case are not much in dispute. The plaintiff had contracted, through a trustee, M. W. O'Brien, to sell to one Ed. E. Ayer, of Chicago, a quantity of cedar ties. The defendant, Widner, was the agent of Ayer. In the spring of 1890 the defendant loaded, from plaintiff's dock in Alpena, two vessels with ties to be taken under the contract. The plaintiff was not at the time present, but was represented by his foreman, Charles Shank, who, plaintiff says in his testimony, had charge of the men in loading the boats. There was some claim by plaintiff that he notified defendant not to send boats until later, as the ties were covered with ice. He testifies that he went from home for about a week, and, when he came back, heard that they had been shipping ties. He says: "I think

Widner told me. I supposed, if he had, it was all right." The contract between the parties provided that the ties should be "made of sound timber, and conform to and be subject in all respects to Chicago inspection, to be made at any port to which said ties may be consigned by said second party, upon either of the Great Lakes." It also provided that—

"Upon the inspection of said ties herein provided for, no rejected ties shall be paid for at all, and no claim for pay for such ties shall be made; but said second party, after deducting rejected ties, shall not claim, upon said inspection, more than 10 per cent. of said remainder to be culls."

On receiving the ties aboard the vessels at Alpena, defendant, Widner, refused to receive the "dead culls," as they were called, which were ties of unsound timber, and, as appears by all the testimony in the case, were worthless. It is the claim of the plaintiff, further, that Widner rejected ties which were sound and merchantable.

The alleged conversion consisted of allowing the ties to be thrown into the lake. The testimony shows that defendant marked the ties which he was unwilling to accept with a blue pencil, and they were for a time piled upon the dock, but afterwards, by direction of the plaintiff's foreman, Shank, were allowed to run into the lake. The defendant was in no way responsible for this, unless the fact of his refusing to accept the ties under his contract, coupled with the act of plaintiff's own agent in throwing the rejected ties into the lake, makes him guilty of a conversion. We do not think that such legal responsibility attaches to him. The fact that it was the intention of the parties that the ties should be inspected at the port of destination does not establish plaintiff's right to maintain trover for the ties rejected. Whether the defendant was right in insisting upon making an inspection or not,

the fact that he did make an inspection does not amount to a conversion. The court charged the jury that—

"If the defendant did not assume to direct and control what should be done with those ties, after he had marked them; if they were then under the control of Mr. Turnbull's foreman and his men, whose duty it was to load the vessel, to put them upon the rail; if they were under their control after Mr. Widner had marked them, and they had the control of them, either to send them into the lake or put them upon the dock,—Mr. Widner would not be liable in this action, whether he marked good ties or poor ties. But if you should find from the evidence in this case that he did actually mark good ties, and directed them to go into the lake, or refused to take them aboard the vessel, and they went into the lake, then he would be liable for a conversion of the property."

These instructions, we think, were sufficiently favorable to the plaintiff. Indeed, we are not able to discover any evidence in the case which would have justified a recovery by the plaintiff.

Judgment will be affirmed, with costs.

The other Justices concurred.